UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

WILLIAM M. FREEMAN,

      Plaintiff,

v.                            Case No.  6:12-cv-1584-ORL-22TBS

SHARPE RESOURCES CORPORATION,
a Canadian corporation; ROLAND M.
LARSEN, a citizen of Virginia; and
ZIGGURAT (Panama), S.A., a Republic of
Panama corporation,

      Defendant.

_____/

<u>REPORT AND RECOMMENDATION</u>

      Pending before the Court is Defendants Roland Larsen and Sharpe

Resources Corporation's Motion to Dismiss Complaint (Doc. 28).  For the following

reasons, I respectfully recommend that the motion be granted in part and denied in

part.

I.  Background[1]

      Plaintiff William M. Freeman, an experienced businessman, was introduced

to Defendant Roland M. Larsen in September 2011.  (¶¶ 8, 11).  Larsen

represented that he had served as President of Defendant Sharpe Resources

Corporation ("SRC") since 1993 and had over 30 years experience in the natural

resource industry including both exploration and management roles.  (¶ 15).

Larsen told Freeman coal was becoming a "hot" commodity and SRC needed

_____

[1]The following facts are alleged in Plaintiff William M. Freeman's Complaint.
(Doc. 1).

money to develop coal mineral rights it owned in Preston County, West Virginia, valued at well over $200 million (the "Project").  (¶ 16).  He gave Freeman written materials about the Project which included representations that the coal mineral rights were owned 100% by SRC and had an estimated reserve of "100 MMT (min 10 yr life)," which meant the Project could produce 100,000 tons of CBM Steam (high btu/low sulfur) coal per month.  (¶ 17).  Larsen verbally made these same representations to Freeman. (Id.).  He also said that although SRC owned the coal mineral rights, a private company called Standard Energy Corporation or Standard Energy Company ("Standard"), would operate the Project.  (¶ 16).

Larsen informed Freeman that in 2008 or 2009, Prospect Capital Corporation, which is a reputable lender, had performed due diligence and had agreed to provide the money SRC needed, but the deal fell through when Larsen was unhappy with the terms Prospect Capital offered.  (¶ 18).  Larsen told Freeman that Defendant Ziggurat (Panama) S.A., had virtually guaranteed SRC a $100 million loan to use in developing the Project and that SRC intended to enter into an agreement with Ziggurat under which Ziggurat would use its "best efforts" to secure up to $100 million in funding for the Project.  (¶¶ 16, 19).  He said Ziggurat could virtually assure the loan but it required SRC to provide "continuing liquidity through the application process at a minimum of 1% of requested loan amount."  (Id.).  This meant SRC needed to deposit $1 million in cash with Ziggurat's escrow agent, OPT Title, prior to the execution of the agreement with Ziggurat.  (Id.).  Larsen asked Freeman if he would make a $1 million refundable full recourse loan to enable SRC

to obtain the financing from Ziggurat.  (¶ 16).  He told Freeman the money would be

held in escrow, and if the loan did not close within 60 days the money would be

returned to Freeman.  (¶ 20).

Freeman spoke to Ziggurat's Compliance Officer who said the deal "made

sense" for Ziggurat.  (¶ 21).  The Compliance Officer also confirmed that the $1

million would be held in escrow and would be returned to Freeman if the financing

did not close within 60 days.  (Id.).  Freeman, acting in reliance upon the

representations made by Larsen, SRC and Ziggurat, agreed to place $1 million of

his money in escrow with OPT Title for the benefit of SRC.  (¶ 22).  He conditioned

his agreement on SRC's promise to return the money if the financing did not close

within 60 days.  (Id.).  On or about September 29, 2011, Freeman deposited $1

million into OPT Title's account at JP Morgan Chase Bank for the benefit of SRC.

(¶ 23).  After Freeman delivered the $1 million, Larsen told him Ziggurat had agreed

to increase the financing to $130 million, which would require an additional

$300,000 escrow deposit.  (¶ 24).  Freeman agreed to provide the money and

deposited another $300,000 into OPT Title's account at JP Morgan Chase Bank.

(¶¶ 24, 25).   Charles Gordon is the President of Ziggurat and OPT Title.  (¶ 26).

Gordon acknowledged that both companies knew the money supplied by Freeman

had been deposited into escrow for the benefit of SRC; that the money belonged to

Freeman; and that it was to be returned to him if the Project financing did not close

within 60 days.  (Id.).  Gordon repeatedly assured Freeman that his money would

be returned if the financing did not close within the 60 days, and that Ziggurat had never failed to return a liquidity deposit when a loan failed to close.  (Id.).

The financing transaction with Ziggurat did not close within 60 days and has never closed.  (¶ 34).  Despite Freeman's repeated demands, his $1.3 million has not been returned to him.  (¶¶ 34, 35).  Prior to the filing of this lawsuit, Freeman's lawyer sent a demand letter pursuant to Florida's civil theft statute, Fla. Stat. § 772.11(1), to Gordon as President of Ziggurat and OPT Title and to Larsen individually and as President of SRC.  (¶ 35).

In his complaint, Freeman alleges that SRC never owned the coal mineral rights and OPT Title is a defunct Florida corporation that was wholly owned by Ziggurat and controlled by Gordon.  (¶¶ 10, 27).  According to publically available tax assessor records, Standard owns the Preston County, West Virginia coal mineral rights which it purchased for $250,000 in December 2006.  (¶¶ 7, 27).  In an April 30, 2012 SEC filing, SRC reported that it had entered into an agreement to acquire Standard in return for the forgiveness of a $250,000 debt and the issuance of two million shares of SRC's common stock, but the deal was terminated after it did not receive regulatory approval.  (Id.).

Freeman complains in Count I that Defendants converted and stole his $1.3 million.  Count II alleges that Defendants, intending to defraud Freeman, made the following representations, all of which were false:

(1) Larsen, acting individually and on behalf of SRC, said the Preston County coal mineral rights were owned 100% by SRC and had an estimated reserve of 100

MMT (min 10 yr life), meaning they could produce 100,000 tons of CBM Steam (high btu/low sulfur) coal per month.  (¶ 33);

(2) Larsen's representation that the Preston County coal mineral rights were worth over $200 million (Id.);

(3) Larsen's representation that in 2008 and/or 2009, Prospect Capital had conducted due diligence and had agreed to provide capital for the Project but the deal fell apart when Larsen was unhappy with the terms Prospect Capital offered (Id.);

(4) Representations by Larsen and representatives of Ziggurat that the $1.3 million would be held in escrow and returned if the financing transaction did not close within 60 days (Id.);

(5) Representations by Ziggurat that there had never been a single complaint made against it and that it had always returned the entire liquidity deposit if a financing transaction did not close.  (Id.)

Count III is an action for common law fraud in which Freeman seeks rescission, although he does not say what should be rescinded, and the return of the $1.3 million.  Count IV alleges that Defendants conspired to commit common law fraud, conversion and civil theft.

Larsen and SRC have filed a motion to dismiss Freeman's complaint pursuant to FED.R.CIV.P. 12(b)(6) because: (1) his fraud claims are barred by Florida's economic loss rule; (2) his fraud claims are barred by the merger clause in the Agreement described below; (3) if Freeman's claims of fraud fail, then his claim

of civil conspiracy to commit fraud must also fail; (4) Freeman did not adequately

plead his civil conspiracy claim; and (5) his claim of civil theft fails because he does

not and cannot allege that SRC and Larsen ever controlled the $1.3 million in

escrow.  (Doc. 28).  These Defendants have also asked the Court to strike

Freeman's prayer for punitive damages on the ground that punitive damages are

not available in an action for breach of contract.  (Id.).

　　　SRC and Larsen attached to their motion to dismiss a copy of an Agreement

("Agreement") dated September 29, 2011 between them, Freeman and Joseph

Cornwell (the person who introduced Freeman to Larsen).  (Doc. 28-1).  The

Agreement includes a statement that if "the [SRC]-Ziggurat loan does not close

within 60 days, then Mr. Freeman's loan is to be refunded in accordance with the

[SRC]-Ziggurat MOU, sections 8.1 and 8.2."  (Doc. 28-1 at 2).  The Agreement

refers to Exhibit "A", identified as a copy of the Escrow Agreement between SRC

and OPT Title, but the exhibit is not attached.  (Id.).  The Agreement also contains

the following merger clause:

> This document contains the entire agreement between
> the Parties hereto.  No oral or other representation or
> warranty has been given, and this agreement controls
> over any and all oral representations made by any party
> to this transaction.

(Id. at 4).  SRC and Larsen have also filed a copy of an amendment to the

Agreement effective October 3, 2011, which addresses the additional $300,000

Freeman delivered to OPT Title.  (Id. at 6).  Finally, these Defendants have

attached to their motion copies of the Memorandum of Understanding between

Standard and Ziggurat (the "MOU") (Id. at 11), and the Escrow Agreement between

Standard and OPT (Id. at 16).  Larsen signed the MOU as President and CEO of

Standard (Id. at 14), and he signed the Escrow Agreement as President of

Standard.  (Id. at 16).

On March 7, 2013, SRC and Larsen filed a notice that the Florida Supreme

Court had issued its decision in Tiara Condominium Assoc. Inc. v. Marsh &

McLennan Cos., Inc., No. SC10-1022, 2013 WL 828003 (Fla. March 7, 2013).

(Doc. 38-1).  This is an important new statement by the court concerning the

application of the economic loss rule in Florida.

II.  Legal Standards

A. Motion to Dismiss

To survive a motion to dismiss, a complaint must contain a "short and plain

statement showing that the pleader is entitled to relief."  Ashcroft v. Iqbal, 556 U.S.

662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  The complaint must contain

sufficient facts which, accepted as true, "state a claim to relief that is plausible on its

face."  Id. (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  Id. (citation

omitted).  Detailed factual allegations are not required, but labels and conclusions,

mere naked assertions, or formulaic recitations of the elements of a cause of action

are not sufficient.  Id. at 678 (citing Bell Atlantic corp. v. Twombly, 550 U.S. 544,

555 (2007).

When ruling on a motion to dismiss, the Court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted).  All well pled factual allegations in the complaint are accepted as true and construed in the light most favorable to the non-moving party.  Castro v. Sec'y of Homeland Sec., 472 F.3d 1334, 1336 (11th Cir. 2006).  But, the Court does not have to accept as true a legal conclusion stated as a "factual allegation" in the complaint.  Iqbal, 556 U.S. at 678.  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  Id. (citation omitted).

B. Defense Exhibits

Ordinarily, in deciding a motion to dismiss, the Court is limited to consideration of the four corners of the complaint.  Bickley v. Caremark RX, Inc., 461 F.3d 1325, 139 n.7 (11th Cir. 2006).  However, the Eleventh Circuit has "adopted the 'incorporation by reference' doctrine, under which a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed."  Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002) (internal citation omitted).  Undisputed means the plaintiff does not challenge the authenticity of the document.  Id.

Freeman objects to the Court's consideration of any of the documents attached to the motion.  I agree with him that the Court should not consider the

-8-

MOU or the Escrow Agreement because Ziggurat is the only party to this lawsuit that is also a party to those exhibits, both of which are dated after Freeman deposited the $1 million into escrow.  (Doc. 34 at 6 - 7).  But, I have considered the Agreement, as amended, because Freeman does not dispute its authenticity and because the Agreement is central to his claims in that it explicitly contemplates the possibility that the Ziggurat financing would not close.  (See id.).

### III. Fraud in the Inducement (Counts II and III)

SRC and Larsen argue that the Court should dismiss Counts II and III because they: (1) are barred by the economic loss rule; (2) are barred by the Agreement's merger clause; (3) are insufficiently pled; and (4) the statements at issue are immaterial to the Agreement.

A. Economic Loss Rule

SRC and Larsen argue that Counts II and II are barred by the economic loss rule, but they filed their motion to dismiss before the Florida Supreme Court issued its decision in Tiara Condominium Assoc., Inc. v. Marsh & McLennan Cos., Inc., No. SC10-1022, 2013 WL 828003  (Fla. Mar. 7, 2013).  In Tiara Condominium, the court reviewed the origin and original purpose of the economic loss rule and concluded that it only applies in its original products liability context.  2013 WL 828003  at *7-8. Nonetheless, in her concurring opinion, Justice Pariente wrote that common law contract principles behave similarly to the economic loss rule in that, for a party in contractual privity to bring a valid tort claim, the party must still prove the tort is independent of any breach of contract.  Id. at 9 (Pariente, J. concurring) (citing

Lewis v. Guthartz, 428 So. 2d 222, 224 (Fla. 1982)).  Justice Pariente explained

that recovery for breach of contract is typically limited to the bargained-for

remedies, because to bring a tort claim grounded in a breach of contract threatens

the integrity of that contract by allowing a party to "in effect, seek[] to obtain a better

bargain than originally made." Id. (quoting Indemnity Ins. Co. Of North Am. V. Am.

Aviation, Inc., 891 So.2d 532, 536 (Fla. 2004)(overruled by Tiara Condo, 2013 WL

828003)); see also Am. Aviation, 891 So. 2d at 536-57 ("When the parties are in

privity, contract principles are generally more appropriate for determining remedies

for consequential damages that the parties have, or could have, addressed through

their contractual agreement.").  As the Florida Third District Court of Appeal noted in

Hotels of Key Largo, Inc. v. RHI Hotels, Inc., 694 So.2d 74 (Fla. 3d DCA 1997):

> [T]he essence of the "economic loss" rule is that
> contract law and tort law are separate and distinct, and the
> courts should maintain that separation in the allowable
> remedies.  There is a danger that tort remedies could simply
> engulf the contractual remedies and thereby undermine the
> reliability of commercial transactions.  Once the contract has
> been made, the parties should be governed by it.

694 So.2d at 77 (quoting with approval Huron Tool and Eng'g Co. v. Precision

Consulting Servs., Inc., 209 Mich. App. 365, 532 N.W.2d 541, 544 (1995)). These

contract and tort principles have not changed simply because the economic loss

rule is once again restricted to products liability actions.  Fundamental contractual

principles continue to bar a tort claim where the offending party has committed no

breach of duty independent of a breach of its contractual obligations.  Tiara Condo.,

2013 WL 828003  at 9 (Pariente, J. concurring).

SRC and Larsen argue that Freeman's fraud claims are inseparable from the terms of the Agreement and should therefore be dismissed.  (Doc. 28 at 8 -9, 8 n.5).  Under common law contract principles, fraud in the inducement to contract is a tort independent from a breach of contract because it requires the plaintiff to prove facts separate and distinct from the facts necessary to prove the breach of contract.  See HTP, LTD v. Lineas Aereas Costarricenses, S.A., 685 So.2d 1238, 1239 (Fla. 1996) (explaining that fraud in the inducement is an exception to the economic loss rule because it is a tort independent from a breach of contract) (overruled by Tiara Condo., 2013 WL 828003).   These separate facts may include misrepresentations or omissions which caused the plaintiff  to enter into the contract.  Ladner v. AmSouth Bank, 32 So.3d 99, 105 (Fla. 2d DCA 2009).  A plaintiff will not succeed merely by labeling a breach of contract claim "fraud in the inducement;" rather, the alleged fraud must be separate from the performance of the contract.    See Medalie v. FSC Sec., Corp., 87 F. Supp. 2d 1295, 1305 (S.D. Fla. 2000) (applying Florida law).

Freeman states the purported misrepresentations in full in his Complaint. (Doc. 1 ¶¶ 16 - 18, 21, 32, 33 (A) - (E)); See above.  Only one of the alleged statements relates to a representation covered by the Agreement.  The rest are grounded in the genesis of the parties' understanding and agreement.  See HTP, Ltd., 685 So.2d at 1239 (noting that fraudulent inducement "normally occurs prior to the contract and the standard of truthful representation placed upon the defendant is not derived from the contract, i.e., whether the defendant was truthful during the

formation of the contract is unrelated to the events giving rise to the breach of the

contract." (inner citations and quotations omitted)).  Only Defendants' statements

that the $1.3 million would be held in escrow and returned to Freeman if the

transaction did not close within 60 days are inextricably intertwined with the

performance of the Agreement.  Accordingly, I recommend the Court grant the

motion to dismiss Counts II and III to the extent they are based upon these

statements.  The other representations alleged by Freeman are not covered by or

expressly contradicted by the Agreement and therefore, I recommend the Court

otherwise deny the motion to dismiss on this ground.

B. Merger Clause in Agreement

         SRC and Larsen also rely upon the merger clause in the Agreement as a

defense to Freeman's fraud claims.  In Mejia v. Jurich, 781 So.2d 1175, 1178 (Fla.

3d DCA 2001), the court said "[t]he existence of a merger or integration clause,

which purports to make oral agreements not incorporated into the written contract

unenforceable, does not affect oral representations which are alleged to have

fraudulently induced a person to enter into the agreement."  See also Noack v. Blue

Cross and Blue Shield of Fla., Inc., 742 So.2d 433, 434 (Fla. 1st DCA 1999)

("Neither is the presence of a merger clause an impediment to a cause of action for

fraud in the inducement.").  However, the holding in Mejia is limited; as the court in

Hillcrest Pacific Corp. v. Yamamura, 727 So.2d 1053, 1056 (Fla. 4th DCA 1999)

explained,"[a] party cannot recover in fraud for alleged oral misrepresentations that

are adequately covered or expressly contradicted in a later written contract."  In

cases involving claims of fraudulent inducement, the Court applies a case-by-case analysis to agreements containing merger clauses and if a merger clause – or by extension, any part of a contract – addresses the nature of the oral misrepresentations, it prevents a plaintiff from bringing a claim grounded in those statements. See Hobirn, Inc. v. Aerotek, Inc., 787 F. Supp. 2d 1298, 1304 (S.D. Fla. 2011) (applying Florida law and finding that an integration clause did not prevent the plaintiff from bringing its claim because the integration clause did not expressly contradict the alleged misrepresentations).

Applying this case-by-case standard, I find the alleged representations that the $1.3 million would be held in escrow and returned if the financing did not close are the only statements that are adequately covered by the Agreement. See Advanced Mktg. Sys. Corp. v. Yacht Sales, 830 So. 2d 924, 928 (Fla. 4th DCA 2002) (finding the subject representation adequately covered by the agreement and precluding appellants' recovery in fraud). With the exception of these representations, the presence of the merger clause in the Agreement does not impede Freeman's cause of action for fraud in the inducement. Therefore, I recommend the Court deny this ground of the motion to dismiss.

C. Sufficiency of Fraud Claims

Federal Rule of Civil Procedure 9(b) provides that when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Claims for fraudulent inducement are governed by the heightened pleading standard found in Rule 9(b). Oginsky v. Paragon Prop. of Costa Rica,

Case 6:12-cv-01584-ACC-TBS   Document 41   Filed 04/03/13   Page 14 of 21 PageID 295

LLC, 784 F. Supp. 2d 1353, 1368 (S.D. Fla. 2011).  A complaint satisfies the

particularity requirements of Rule 9(b) by alleging: (1) the precise statements,

documents or misrepresentations made; (2) the time, place and person responsible

for the statements; (3) the content and manner in which the statements misled

plaintiff; and (4) what the defendants gained from the alleged fraud.  Garfield v.

NDC Health Corp., 466 F.3d 1255, 1262 (11th Cir. 2006).

Under Florida law, to state a claim for fraud in the inducement, a plaintiff

must allege: (1) a false statement of material fact; (2) the maker of the false

statement knew or should have known of the falsity of the statement; (3) the maker

intended that the false statement induce another's reliance; and (4) the other party

justifiably relied on the false statement to its detriment.  Rose v. ADT Sec. Servs.

Inc.,989 So.2d 1244, 1247 (Fla. 1st DCA 2008).

Freeman has sufficiently plead that Defendants made the alleged untruthful

statements; the content of the statements; the manner in which they were made;

and how he was misled.  (Doc. 1 ¶¶ 16 - 18, 21, 32, 33(A) - (E)); See above.  He

has also alleged that all Defendants knew the statements were false when made;

they made the statements with the intent of inducing him to contract; and he relied

upon the statements.  (Id. ¶¶ 22, 33).

SRC and Larsen argue that Freeman's claims must fail because he has not

and cannot allege that they obtained anything as a result of the alleged fraud.  I find

this is not fatal to Freeman's claims.  "While the circumstances of fraud must be

alleged with specificity, absolute particularity is not required, especially when some

-14-

matters are beyond the knowledge of the pleader and can only be developed through discovery." <u>Livingston v. H.I. Family Suites, Inc.</u>, No. 6:05-cv-860-Orl-19KRS, 2005 WL 2077315*4 (M.D. Fla. Aug. 29, 2005).  At this stage, it is enough that Freeman has alleged with particularity what he lost and how he lost it. Whether SRC and Larsen benefitted from any alleged fraud is a matter for discovery.  They know what they are accused of and have sufficient information to formulate their defense.  <u>See</u> <u>Wagner v. First Horizon Pharm. Corp.</u>, 464 F.3d 1273, 1277 (11th Cir. 2006).  Accordingly, I recommend the Court find Freeman's claims are made with the particularity required to satisfy Rule 9(b).

D. Materiality of Statements

        Finally, SRC and Larsen argue that the statements attributed to them were not important enough to include in the Agreement, and thus not material to Freeman's decision to contract with SRC and Larsen.  (Doc. 28 at 8 n.5).  This is a factual argument not appropriately made by motion to dismiss.  Under Florida law, materiality is a question of fact.  <u>Silverman v. Pitterman</u>, 574 So.2d 275, 276 (Fla. 3d DCA 1991).  Freeman has sufficiently plead that the alleged misrepresentations were a material inducement for him to make the $1.3 million loan and the Court must accept these allegation as true.  Therefore, I recommend the Court deny this ground of the motion to dismiss.

IV. Civil Conspiracy (Count IV)

A. Actionable Tort

        SRC and Larsen contend that Freeman's civil conspiracy claim must fail

-15-

because his claims of fraud are barred by the economic loss rule and there can be no actionable claim for conspiracy if there was no actionable tort. See Raimi v. Furlong, 702 So.2d 1273, 1284 (Fla. 3d DCA 1997).  Because I find the bulk of Freeman's fraud claims should survive the motion to dismiss, I recommend the Court reject this argument.

B. Allegations of Civil Conspiracy

SRC and Larsen[2] contend that Freeman did not adequately allege a claim of civil conspiracy in Count IV of his complaint.  In Florida, to prove civil conspiracy a plaintiff must allege: (1) an agreement between two or more parties; (2) to do an unlawful act or to do a lawful act by unlawful means; (3) the doing of some overt act in furtherance of the conspiracy; and (4) damage to the plaintiff as a result of the acts done under the conspiracy.  Pierson v. Orlando Reg'l Healthcare Sys., Inc., 619 F.Supp.2d 1260, 1297 (M.D. Fla. 2009) (quoting Raimi v. Furlong, 702 So.2d 1273, 1284 (Fla. 3d DCA 1997)).  SRC and Larsen argue that Count IV is deficient because Freeman has only generally averred a conspiracy and has not alleged an agreement between the parties or an overt act in furtherance of the conspiracy. They also maintain that Freeman bases his claim on "normal, course-of-business

---

[2]As a general rule, an agent cannot conspire with its corporate employer because a corporation can only act through its corporate agents and cannot conspire with itself.  Dickerson v. Alachua Cnty Com'n, 200 F.3d 761, 768-770 (11th Cir. 2000);  Helinautica Int'l, S.A. v. Engage Aviation, No. 8:11-cv-676-T-17TGW, 2011 WL 5553896 *3 (M.D. Fla. Nov. 15, 2011).  Freeman's Complaint alleges  in conclusory fashion that Larsen acted for his personal benefit as well the benefit of SRC.  Based upon these allegations, I find Freeman has not alleged a factual basis that Larsen conspired with SRC.  This does not prevent Freeman from alleging that Larsen conspired with Ziggurat.

conversations and dealings . . . ."

Defendants are undeniably linked in their dealings with Freeman because it was Freeman's liquidity deposit that was meant to facilitate the Ziggurat loan. He has plead that all Defendants lied to him individually and in concert to induce him to provide the $1.3 million. While Freeman does not allege the existence of a specific agreement, his complaint, construed in the light most favorable to him, sufficiently alleges that all Defendants made statements to him concerning the Project and the liquidity deposit with the intention of defrauding him. I find these allegations are sufficient to allege that SRC and Larsen had an agreement or understanding with Ziggurat to defraud Freeman.

I am also not persuaded by SRC and Larsens' argument that Freeman grounds his claims on normal business dealings and conversations. Because Freeman has properly alleged an actionable tort, he has sufficiently plead an overt act. He has alleged false statements made by all Defendants with the intention to defraud him and this intentional misconduct cannot be said to be "normal, course-of-business conversations and dealings."

## V. Conversion and Civil Theft (Count I)

SRC and Larsen maintain that Freeman's civil theft claim must fail because he does not and cannot aver that SRC and Larsen had control or dominion over the OPT Title escrow account. Under Florida law, conversion is an "act of dominion wrongfully asserted over another's property inconsistent with his ownership therein." United Techs. Corp. v. Mazer, 556 F.3d 1260, 1270 (11th Cir. 2009)

(quoting Thomas v. Hertz Corp., 890 So.2d 448, 449 (Fla. 3d DCA 2004)).  The

elements of a claim for conversion of money, which a plaintiff must prove by a

preponderance of the evidence, are: (1) a specific and identifiable sum of money;

(2) possession or an immediate right to possess the money; (3) an unauthorized act

which deprives plaintiff of the money; and (4) a demand for return of the money and

a refusal to do so.  United States v. Bailey, 288 F. Supp. 2d 1261, 1264 (M.D. Fla.

2003) (aff'd by United States v. Bailey, 419 F.3d 1208 (11th Cir. 2005)); but see

Tambourine Comercio Internacional SA v. Solowsky, 312 F. App'x 263, 272 (11th

Cir. 2009) (citing Senfeld v. Bank of N.S. Trust Co. (Cayman), 450 S.2d 1157, 1161

(Fla. 3d DCA 1984) for the proposition that demand and refusal are not required

elements for a conversion claim).

        Civil theft is essentially a conversion in which the defendant acted with

criminal intent.   Gasparini v. Pordomingo, 972 So.2d 1053, 1056 (Fla. 3d DCA

2008). To state a claim for civil theft, the plaintiff must allege that the defendant

knowingly obtained or used, or endeavored to obtain or use the plaintiff's property

with intent to either temporarily or permanently (1) deprive the plaintiff of his right to

or a benefit from the property or (2) appropriate the property to the defendant's own

use or to the use of any person not entitled to the property.  Fla. Stat. §§ 772.11,

812.014.

        A plaintiff cannot bring a claim of civil theft or conversion simply because the

defendant has failed to repay a debt.  Walker v. Figarola, 59 So.3d 188, 190 (Fla.

3d. DCA 2011); Florida Desk, Inc. v. Mitchell Intern., Inc., 817 So.2d 1059, 1060

(Fla. 5th DCA 2002).  Instead "the civil theft or conversion must go beyond, and be independent from, a failure to comply with the terms of a contract.".  Walker v. Figarola, 59 So.3d at 190 (quoting Gasparini, 972 So.2d at 1055).  When there is "not merely a failure to perform, but an affirmative and intentional act of converting the funds to [a defendant's] own use by allegedly stealing the monies to which he was entrusted, there is not merely a breach of contract but a separate and independent tort." Am. Vintage Gun and Pawn, Inc. v. Hogan Mfg., LLC, No. 8:12-cv-25-T-24MAP, 2012 WL 2366690 *7 (M.D. Fla. June 21, 2012) (quoting Burke v. Napieracz, 674 So.2d 756, 758 (Fla. 1st DCA 1996)).

For money to be the subject of a conversion claim there must be "an obligation to keep intact or deliver the specific money in question, so that money can be identified." Walker, 59 So.3d at 190 (quoting Gasparini v.Pordomingo, 972 So.2d at 1056); Tambourine Comercio Internacional SA v. Solowsky, 312 F. App'x 263, 272 (11th Cir. 2009) (citing Allen v. Gordon, 429 SO.2d 369, 371 (Fla. 1st DCA 1983)).  Money is identifiable when it is delivered all at once or where the deposit is unique and the money is to be kept for the party making the deposit. Belford Trucking Co. v. Zagar, 243 So.2d 646, 648 (Fla. 4th DCA 1970).  Freeman alleges that the money in question was delivered in two payments, to be held in escrow for a specific purpose.  This is sufficient to allege that the money is specific and identifiable.  See Bel-Bel Int'l Corp. v. Comm'ty Bank of Homestead, 162 F.3d 1101, 1109 (11th Cir. 1998).

Freeman is not required to allege that SRC or Larsen ever had dominion or

-19-

control over the OPT Title escrow account.  To plead civil theft and conversion, he must only aver that: (1) SRC and Larsen endeavored to obtain and use his money for their own benefit or the benefit of someone else who was not entitled to the funds, and (2) an unauthorized act which deprived him of his money.  Freeman has sufficiently pled these requirements by alleging SRC and Larsen's intent to and success in defrauding him.  Therefore, I recommend the Court deny Larsen and SRC's motion to be dismissed from Count I of Freeman's complaint.

I. Punitive Damages

Lastly, SRC and Larsen ask the Court to strike Freeman's demand for punitive damages because they are not recoverable for breach of contract. Because I find Freeman's fraud claims largely survive the motion to dismiss, I find punitive damages are recoverable and recommend the Court reject this argument. See Sendtec, Inc. v. Cosmetique, Inc., No. 8:07-cv-1643-T-24TGW, 2008 WL 2439748 *3 (M.D. Fla. June 13, 2008).

III.  Recommendation

I respectfully recommend that the Court GRANT Defendants Roland Larsen and Sharpe Resources Corporation's Motion to Dismiss Complaint (Doc. 28) in part and DISMISS Counts II and III to the extent those Counts are based on these Defendants' alleged statements that the $1.3 million would be held in escrow and returned to Freeman if the transaction did not close within 60 days. (Doc. 1 ¶ 33(c)). In all other respects, I recommend that the Court DENY the motion.  I further recommend that the Court give leave to Freeman to amend his Complaint.

Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation.  Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual findings on appeal.

Recommended in Chambers in Orlando, Florida, on April 3, 2013.

THOMAS B. SMITH
United States Magistrate Judge

Copies to:

      Presiding United States District Judge
      Counsel of Record